**UNITED STATES of America, Appellee,**

v.

**James Franklin MORRIS, Jr., Appellant.**

**No. 20711.**

United States Court of Appeals, Eighth Circuit.

July 21, 1971.

---

Robert A. Warder, Rapid City, S. D., for appellant.

William F. Clayton, U. S. Atty., Thomas P. Ranney, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before MATTHES, Chief Judge, GIBSON, Circuit Judge, and HENLEY, District Judge.*

MATTHES, Chief Judge.

This case is before us on appeal by James Franklin Morris, Jr. from judgment of conviction entered on a jury verdict finding him guilty under a two-count indictment of unlawfully and knowingly possessing, passing and uttering two counterfeit $100 Federal Reserve Notes in violation of 18 U.S.C. § 472.[1]

The sufficiency of the evidence to sustain the jury's verdict is not an issue; indeed there is no suggestion in appellant's brief that he did not commit the offenses as charged. For that matter, such a contention would be futile for the evidence of guilt is strong and overwhelming. We forego a detailed statement of the facts. The following brief résumé will suffice.

Appellant with three associates, two males and one female, left Little Rock, Arkansas, in April 1970, possessing counterfeit $100 Federal Reserve Notes totalling $40,000. They eventually reached the State of South Dakota. On May 11, 1970, in Rapid City, South Dakota, appellant tendered one of the $100 counterfeit notes in payment for merchandise and received the difference between the cost and the amount of the

---

* Chief Judge, United States District Court, Eastern District of Arkansas, sitting by designation.

1. The indictment alleged and the evidence shows that appellant's correct name is James Franklin Morris, Jr., but he used the aliases of Frank Smith and Frank Wright. Appellant admitted in a hearing outside the presence of the jury that he had two prior felony convictions.

bill in genuine money. A similar transaction took place on the same day in Spearfish, South Dakota. The next day, May 12, appellant was arrested in Buffalo, Wyoming, by the Sheriff of Johnson County, Wyoming. In due time, appellant was returned to South Dakota where he was indicted, tried and found guilty. Appellant contends that he was illegally arrested in Wyoming and also asserts prejudicial error in the trial proceedings. We find no substance in any of the points presented and affirm the judgment.

### I.

Although it is not entirely clear from the statement of issues presented on appeal, it seems apparent that appellant contends that he was arrested without probable cause, that the search and seizure made incidental to that arrest was invalid and that the court should have suppressed the articles seized.[2]

We start from the premise, as recognized by appellant, that the validity of the arrest must be determined by the law of the state where the arrest is made. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Turk v. United States, 429 F.2d 1327, 1330 (8 Cir. 1970). Under Wyoming law, a state officer may, without a warrant, arrest one whom he has reasonable or probable grounds to suspect of having committed a felony. State v. George, 32 Wyo. 223, 231 P. 683, 690 (1924).

We are firmly convinced that the Sheriff of Johnson County, Wyoming, acted upon probable cause when he arrested the appellant. This record shows without contradiction that appellant, who was wearing flashy clothing, made purchases of merchandise in places of business in Rapid City and in Spearfish, South Dakota, on May 11. By reason of the suspicious appearance of the $100 bills, Sheriff McGrath of Lawrence County, South Dakota, was alerted. After consultation with the clerks who waited upon appellant, Sheriff McGrath contacted Sheriff Turk of Johnson County, Wyoming, and conveyed to him all of the pertinent information relating to appellant's mode of dress, his size, the fact that he had gold-filled teeth, long sideburns and other distinguishing features. Sheriff McGrath informed Sheriff Turk that a state warrant was being obtained for appellant's arrest.[3] Acting upon the information which Sheriff Turk had received from a reliable source, to-wit, Sheriff McGrath, who had in turn obtained reliable information from the clerks who had ample time to view appellant when he passed the counterfeit notes, Sheriff Turk made the arrest on the late afternoon of May 12.

The facts pertinent to the arrest take this case outside the reach of Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), where the Su-

---

2. It is settled law that an illegal arrest without more, i. e. a search and seizure; goes to the jurisdiction over the person of the defendant. Where the accused does not attack the jurisdiction of the court over his person after he is arrested, and he is personally before a court having jurisdiction of the subject matter, the court has jurisdiction over the accused regardless of how he may have been brought into the presence of the court. See Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Sewell v. United States, 406 F.2d 1289, 1292–1293 (8th Cir. 1969); United States v. Turner, 442 F.2d 1146, fn. 1 (8th Cir. 1971). Here, appellant, while represented by counsel,

consented to his removal from Wyoming to South Dakota.

3. A warrant for the arrest of appellant was obtained from a court in Lawrence County, South Dakota, on May 12, upon a criminal complaint filed by the Sheriff of Lawrence County, South Dakota, which charged the appellant and John Doe and Jane Doe with passing counterfeit $100 bills contrary to South Dakota Compiled Laws § 22–39–26 (1967). The South Dakota warrant was taken by Sheriff McGrath to Wyoming and delivered to Sheriff Turk. However, this occurred shortly after appellant had been arrested.

preme Court found an arrest warrant invalid, because the complaint consisted of nothing more than the sheriff's conclusion that the individuals named therein perpetrated the offense described in the complaint. In *Whiteley*, the court also held that the arresting officer did not possess sufficient factual information to support a finding of probable cause for arrest without a warrant, where the officer had learned through a radio bulletin the description of the suspects, and the sheriff who issued the bulletin had acted on an informer's tip but where the record was devoid of any information which would support either the reliability of the informer or the informer's conclusion that the men were connected with the crime. Here, as noted, the officer issuing the bulletin, namely, Sheriff McGrath, was acting upon reliable information received from known and reliable persons.

We therefore conclude upon the authority of numerous decisions by this court (e. g., United States v. Wahlquist, 438 F.2d 219 (8th Cir.), cert. denied 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432 (1971); United States v. Mitchell, 425 F.2d 1353 (8th Cir.), cert. denied 400 U.S. 853, 91 S.Ct. 85, 27 L.Ed.2d 90 (1970); United States v. Lugo-Baez, 412 F.2d 435 (8th Cir. 1969), cert. denied 397 U.S. 966, 90 S.Ct. 1000, 25 L. Ed.2d 257 (1970)), that the Wyoming Sheriff acted upon probable cause in arresting appellant and that the search and seizure are immune from attack.

■■ Neither do we find any basis for reversing on the ground of a violation of Rule 5(a) or Rule 40(b) of the Federal Rules of Criminal Procedure which provide that the arrested person shall be taken without unnecessary delay before the nearest available commissioner. This issue has been the subject of consideration in any cases. The requirements of the foregoing rules and the teachings of the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) are designed to frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual. But this salutary principle is not applicable where the person under arrest is in the custody and under the control of local and not federal officers, unless, of course, the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities. See Grooms v. United States, 429 F.2d 839, 842–843 (8th Cir. 1970), and the numerous cases there cited. Here the teachings of *McNabb* and *Mallory* do not apply because the initial action was instituted by the South Dakota Sheriff without knowledge on the part of any government officers, and the arrest was made by the Wyoming state official again without knowledge by federal officials. A Secret Service Agent of the United States Government did not enter the picture until May 14, two days after the arrest. There is evidence to show that on the same day that the federal officer questioned appellant, he was taken before a United States Commissioner in Wyoming. In short, we find no rational basis for holding that the appellant's rights were in any respect prejudiced by the proceedings which occurred between his arrest by the Sheriff and the time that he was taken before a commissioner.

## II

■ During the trial, the district judge interrogated witnesses. Appellant did not object or take exceptions to the court's action but now claims that the court's intervention constituted plain error. We disagree. It is true that Judge Bogue did on occasion interrogate the witnesses. A number of his inquiries occurred in hearings conducted out of the presence of the jury. In any event, we detect nothing offensive or prejudicial in the court's interrogation. It is manifest that the judge was probing for

the purpose of ferreting out the truth of what occurred.[4]

## III

■ Neither do we find any substance in the contention that the court erred in permitting the witnesses to make an in-court identification of the appellant. The court, out of an abundance of caution, conducted a pre-trial hearing for the purpose of determining whether the procedures promulgated by the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) were violated when appellant was identified by one of the salesladies at the time that the appellant was in the custody of Sheriff Turk in Buffalo, Wyoming. The court decided this issue in favor of appellant but held that if the same witness could make an in-court identification independent of the so-called "line up" identification, and upon observations gained from her contacts with the appellant during the sale of the merchandise, that such testimony would be admissible.

Both of the clerks who sold appellant merchandise made in-court identifications and this record convinces us beyond question that the in-court identifications were in no way tainted or influenced by the line-up identification. We hold, therefore, that the in-court identification testimony was properly admitted. See and compare Williams v. Haynes, 440 F.2d 796 (8th Cir. 1971); United States v. Wright, 433 F.2d 671 (8th Cir. 1970); United States v. Ranciglio, 429 F.2d 228 (8th Cir.), cert. denied 400 U.S. 959, 91 S.Ct. 358, 27 L. Ed.2d 268 (1970).

## IV

■ The appellant also asserts as error the admission of appellant's oral confession made to a United States Secret Service Agent, the specific contention being that appellant had not been fully apprised of his constitutional rights as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

The record fully and completely refutes this contention. The appellant was given the *Miranda* warnings, not once but twice, after which he made incriminatory statements to the effect that he along with his three accomplices had possessed and had passed a number of $100 counterfeit reserve notes, including the two above referred to which were used in purchasing merchandise in South Dakota. In connection with this claim, it is significant to note that although the appellant testified out of the hearing of the jury in regard to another matter, he did not see fit to deny that he had confessed to the charges, and neither did he testify that he was not fully warned of his rights.[5]

## V

Appellant's final contention that the court erred in allowing introduction of government's exhibits 1 to 8 for lack of proper foundation has been fully considered and is utterly lacking in substance.

A careful canvass of the record demonstrates to our complete satisfaction that the appellant received a fair trial. His rights were fully protected in every respect. The court on motion of appellant's counsel authorized the taking of the deposition of appellant's two male accomplices. The deposition of one was taken at the penitentiary in the State of

---

4. We observe in passing, however, that a trial judge should exercise restraint and caution in the interrogation of witnesses particularly before the jury so that the jury will not be improperly influenced.

5. Judge Bogue conducted a hearing in accordance with the teachings of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), found the confession had been voluntarily made, and also submitted the issue to the jury.

Mississippi and the other in a jail in the State of Louisiana. Both depositions entailed a substantial expense which was taxed against the government.

The judgment is affirmed.